**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GINGER EDWARDS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-466** |
| **GRANT JACK, ET AL.** | **SECTION: "C"(1)** |

<u>REPORT AND RECOMMENDATION</u>

Pro se plaintiff Ginger Edwards filed the present Complaint against Grant Jack, Joe Bologna, David A. AKA Tom Keith, Jay Odem, and Amanda Krafka Duke Keith for violation of her civil rights. Over the span of over 30 pages, Ms. Edwards details events going back as far as 1996. She seeks $300,000,000 in damages. Because the Complaint is frivolous and fails to state a claim, it is RECOMMENDED that this lawsuit be DISMISSED.

<u>Background</u>

The first two pages of the Statement of Facts attached to Ms. Edwards' Complaint recount, among other things, that she was kept away from her husband by her husband's son who was using her husband's identity, that she was the victim of a pedestrian hit and run, that the phone she bought her husband disappeared, that her husband died while she was away from home and his children had his body cremated and held a memorial service without notifying her, that loans were taken out in her name, and that Amanda Krafka bought a car in her name. Rec. Doc. 1, at 6-7.

She then went to the Dallas County District Attorney's office and met investigator Grant Jack and reported at least some of these issues. She asserts that she was vulnerable and that he said she would be safe with him. From there, the allegations become increasingly fantastical.

Ms. Edwards alleges that she would visit Grant Jack and text him periodically and that she was aware he was listening to her phone calls. She then met Richard "Dick" Smith at an Alcoholics

1

Anonymous meeting at the Harbor Club. He loaned her $200, but she did not know he was a gangster. She did not pay him back in a timely manner. And then, Grant Jack made a wager with Dick Smith that Dick could not kill her and that Jack could keep her alive. She claims she was terrorized for what seemed like years.

Over the course of the next 30 pages, Ms. Edwards continues a stream-of-consciousness description of events involving storm sirens going off; seeing gunmen and assassins pointing weapons at her; being hospitalized with medical issues; having a tracking device put on her phone by the hospital; receiving a text from Grant Jack that she had been poisoned with arsenic and had 24 hours to live; seeking help from Texas Ranger Jay Odem and being asked for proof that Grant was poisoning her; being taken to a mental facility in Garland for 10 days by Texas Rangers who came to her hotel room; having her apartment ransacked; having her car totaled by a woman who Grant Jack had back up into her; having people come into her apartment and poisoning her food; feeding a homeless man a sandwich who said his jaw was locked up because the sandwich was full of arsenic; requesting a hair follicle test for analysis of poisons; going to the police and being accused of poisoning herself; having to surrender her dog to a shelter; being assaulted in a park; being harassed by bus drivers and at coffee shops she frequented; being unable to obtain help from city employees, lawyers, domestic violence shelters, or churches; experiencing eviction proceedings; having her car totaled again, this time when Grant Jack had a state employee in a government car road rage her;  getting bruises when unidentified DHS agents picked her up by her arms and detained her; spray painting "Odem call Ginger Edwards" and her phone number, but it was painted over by a member of the Harbor Club; being stalked by a man who called himself Biff who knows Grant Jack; having to pull off the road while driving because someone had put poison on the steering wheel; being threatened by a man in a parking lot; getting arrested for purportedly

driving a car that had been reported as stolen and then being committed to a behavioral hospital; being repeatedly poisoned while at the facility; being prescribed medication contraindicated with her heart medication; learning that Tom Keith and Amanda Krafka were married and having a baby; finding food and water in a donation box was poisoned; learning that Amanda and Tom were pretending to be her and her deceased husband and living in her home along with Grant Jack and individuals named Debbie and Joshua; being released from jail and learning Social Security would require her to repay the money she was sent while incarcerated; seeking help from Pat Thomas and learning that Pat was getting "deeper and deeper involved with Grant Jack and in a relationship with Joe Bologna;" being persuaded by Pat and a friend to go to a hospital or facility called Wellbridge for crisis stabilization and experiencing horrendous treatment there; going to a convenience store and purchasing a package of cigarettes that were poisoned; going to Washington D.C. to seek help; trying to return to Fort Worth but learning that her Bank of America credit card had been blocked by defendants Grant, Amanda, Joe, and David; relocating to Oklahoma to stay with a man she met at the Harbor Club, staying at a shelter, and finding her bed drenched with toxic poison while she went to the bathroom at night; and then going to the hospital in Oklahoma and staying overnight in a psychiatric place where the chair and blanket were saturated with the same poison. Next, in August 2025, she arrived here in New Orleans, Louisiana. After two and half ideal months at the Salvation Army here, things took a turn for the worse and she alleges she began experiencing harassment and poisoning. She claims that defendants Grant Jack, Joe Bologna, David A. AKA Tom Keith, and Amanda Krafka Duke Keith all followed her here.

Ms. Edwards filed this lawsuit on March 4, 2026, against Grant Jack, Joe Bologna, David A. AKA Tom Kieth, Jay Odem, and Amanda Krafka Duke Keith. She reports that these are the

"top five defendants," and that she will use Federal Rule of Civil Procedure 15 (which concerns pleading amendment) when she is ready to add the other defendants.

The Court has permitted Plaintiff to proceed *in forma pauperis* in the instant proceeding under the provisions of 28 U.S.C. § 1915(a). However, summons has not issued in order to allow the Court to review Plaintiff's complaint to determine whether it satisfies the requirements of the federal *in forma pauperis* statute.  On its face, Plaintiff's complaint fails to meet the requirements of the statute.

Law and Analysis

There exists no absolute right to proceed *in forma pauperis* in federal civil matters; instead, it is a privilege extended to those unable to pay filing fees *when it is apparent that the claims do not lack merit on their face*. See Startii v. United States, 415 F.2d 1115, 1116 (5th Cir. 1969); see also Adepegba v. Hammons, 103 F.3d 383, 387 (5th Cir. 1996) (noting that the revocation of the privilege of proceeding in *forma pauperis* is not new), abrogated in part on other grounds by Coleman v. Tollefson, 135 S. Ct. 1759, 1762-63 (2015)).

28 U.S.C. § 1915(e)(2)(B) provides for summary dismissal *sua sponte*, should the Court determine that a case is frivolous. Section 1915(e)(2)(B) provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court **shall dismiss** the case at any time if the court determines that –
> * * *
> (B) the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (emphasis added). "[A] complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Rogers v. Boatright, 709 F.3d 403, 407 (5th

4

Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is "frivolous" where it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The term "frivolous" in the statute "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Id.

For example, a court dismissed a plaintiff's claims as frivolous under § 1915(e) where he alleged that employees of the federal government were "using advanced technology with a direct signal to the satellite in outer space that has the capability of calculating a genetic code to inflict upon the petitioner and his immediate relatives different types of genetic virus[es]." Flores v. U.S. Atty. Gen., 434 F. App'x 387, 388 (5th Cir. 2011). Another court dismissed as frivolous plaintiff's claim that he had been "poisoned, beaten, shocked with a taser, shot with a red dot laser, and gassed" by officers at the prison where he was incarcerated and that "witchcraft and sorcery were used in an attempt to kill him and he was poisoned three times per day for two weeks." Andrews v. Livingston Par. Det. Ctr., No. CV 21-21-SDD-RLB, 2021 WL 1940202, at *2 (M.D. La. Mar. 17, 2021), report and recommendation adopted, No. CV 21-21-SDD-RLB, 2021 WL 1936231 (M.D. La. May 13, 2021). A district court in Texas issued an order that plaintiff show cause why his complaint should not be dismissed as frivolous where he alleged that the owner of a trucking company "was responsible for Plaintiff being assaulted, and that [he] paid to have Plaintiff poisoned in Houston, Texas" and alleged further that "some sort of signal is being directed at his genitals whenever he comes to the federal courthouse in San Antonio." Mantei v. Stocking, No. SA-18-CA-91-XR, 2018 WL 1895547, at *1 (W.D. Tex. Feb. 2, 2018). But a court may not dismiss an in forma pauperis complaint, "simply because the court finds the plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 33, (1992) (noting that truth can be stranger than fiction).

5

Here, Ms. Edwards alleges a violation of civil rights under 42 U.S.C. § 1983. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

Although Ms. Edwards claims a violation of her civil rights, she does not identify any rights that have been violated. Her Complaint contains voluminous references to harms, slights, and injuries she has allegedly experienced, but it is unclear what injuries she is seeking to remedy via this lawsuit. Defendants Joe Bologna and David A. AKA Tom Keith are barely mentioned at all, and Amanda Keith and Jack Odem only slightly more. At the other extreme, Grant Jack is mentioned throughout the Complaint, often as a shadow that was in contact with someone Ms. Edwards was communicating with or as a puppeteer responsible in some unexplained way for the actions of others. It is impossible to determine what civil rights any of the defendants may have violated.

Ms. Edwards alleges in a conclusory fashion that all of the defendants except Amanda Keith were acting under color of law. But while she alleges that Grant Jack and Jack Odem were

6

Texas state government employees, the facts alleged do not support finding that they were acting under color of law at any time. She also claims that Joseph Bologna and David Keith are former US Attorneys. But the scant allegations in the Complaint concerning these defendants do not suggest they were acting in their roles as U.S. Attorneys. Moreover, U.S. Attorney is a federal position and § 1983 is not applicable to claims against federal officials. See Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev., 980 F.2d 1043, 1053 (5th Cir. 1993).

Federal Rule of Civil Procedure Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint which violates Rule 8 may be dismissed when it is "so verbose, confused and redundant that its true substance, if any, is well disguised." Corcoran v. Yorty, 347 F.2d 222, 223 (9th Cir. 1965).

Ms. Edwards' Complaint is far from a short plain statement of her claims. Instead, it amounts to a 32-single-spaced-page stream-of-consciousness narrative. Although she describes numerous unfortunate and at times fantastical events, it remains unclear what harms she seeks to remedy with this lawsuit and how those injuries relate to a violation of her civil rights. It seems the vast majority of the allegations concern events that occurred long ago.[1] For example, she references her marriage in 1996 and the COVID pandemic in 2020. She attaches what appears to be a hair follicle test showing the presence of arsenic that is dated 2015 and a news article referencing an investigation of Grant Jack by Texas Rangers in 2014. Furthermore, taken together, the allegations are fanciful and delusional in their scope and content. It is not simply that the scenarios she describes are unlikely, they are untethered from reality.

---

[1] In Louisiana, a one-year prescriptive period applies to claims under 42 U.S.C. § 1983 before July 1, 2024. Parria v. Cvitanovich, No. CV 23-3663, 2025 WL 2756678, at *5 (E.D. La. Sept. 29, 2025). After that date, a two-year prescriptive period applies. Id. at *5 n. 64. In Texas, a two-year statute of limitations applies to claims under 42 U.S.C. § 1983. King-White v. Humble Indep. Sch. Dist., 803 F.3d 754, 761 (5th Cir. 2015).

The Court finds that Ms. Edwards' Complaint is frivolous and it is impossible to find that she has stated a claim. Accordingly,

**IT IS RECOMMENDED** that this lawsuit be DISMISSED as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 13th day of April, 2026.

Janis van Meerveld
United States Magistrate Judge

8